IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| STEVEN K. ZINNEL,<br><br>Plaintiff,<br><br>v.<br><br>CITIMORTGAGE, INC., a New York Corporation; CR TITLE SERVICES, INC., a Delaware Corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 2:10-cv-02406-GEB-DAD<br><br>ORDER DENYING PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER |

On September 9, 2010, Plaintiff Steven K. Zinnel, proceeding *in propria persona*, filed an ex parte application for a temporary restraining order ("TRO") and preliminary injunction in which he seeks to enjoin the non-judicial foreclosure sale of his home, which is scheduled to occur on September 22, 2010. However, "[t]he court may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. Pro. 65(a)(1). Plaintiff declares he "inform[ed] [Defendants that Plaintiff would be bringing the instant Application and Motion," and that a copy of the "fax/email is attached [to his declaration] as Exhibit 31." (Decl. Supp. Mot. TRO "Decl." ¶ 6.) Exhibit 31 is not attached to Plaintiff's Declaration, however, Exhibit 28 appears to be a copy of the notice Plaintiff sent. (Id. Ex. 28.)

Exhibit 28 does not indicate whether or not Plaintiff provided Defendants with a copy of his application; it appears that Plaintiff only informed them he would be seeking an injunction.

For the reasons stated below, Plaintiff's TRO application is DENIED.

## I. LEGAL STANDARD

"Temporary restraining orders are governed by the same standard applicable to preliminary injunctions." Pimentel v. Deutsche Bank Nat. Trust Co., No. 09-CV-2264 JLS (NLS), 2009 WL 3398789, at *1 (S.D. Cal. Oct. 20, 2009); see also Stuhlbarg Intern. Sales Co., Inc. v. John D. Brushy and Co., Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2001)(stating the standards for issuing a TRO are "substantially identical" to those for issuing a preliminary injunction). Therefore, "[a] plaintiff seeking a [TRO] must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Am. Trucking Ass'n, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009)(quoting Winter v. Natural Res. Def. Council, Inc., --- U.S. ----, 129 S. Ct. 365, 374 (2008)). "A preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." Alliance for the Wild Rockies v. Cottrell, --- F.3d ----, 2010 WL 2926463, at *7 (9th Cir. 2010). A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter, 129 S. Ct. at 376.

///

**II. BACKGROUND**

Plaintiff declares that in October 1995, Plaintiff and his now ex-wife purchased the real property located at 11966 Old Eureka Way, Gold River, California 95670 (the "Property"). (Decl. ¶ 18.) Plaintiff and his ex-wife executed a Promissory Note to borrow $294,550.00 plus interest at the fixed rate of 8.25 percent from Commerce Security Bank (the "Note"). (Id. Ex. 1.) The Note was secured by a Deed of Trust which was recorded in the Official Records in the Office of the Recorder of Sacramento County, California on October 27, 1995 ("Bank Deed of Trust"). (Id. Ex. 2.) The Bank Deed of Trust lists the beneficiary as the Commerce Security Bank and "its successors and/or assigns" and the trustee as the Stewart Title Guaranty Company. (Id.)

Plaintiff declares "as part of his marriage dissolution proceeding," he was awarded sole ownership of the Property. (Id. ¶ 20.) An Interspousal Transfer Deed was recorded on April 8, 2002. (Id. Ex. 3.) The same day Plaintiff executed a Promissory Note to borrow $80,000.00 from Derian Eidson and secured the loan with a Deed of Trust which was recorded on April 8, 2002, making it junior to the Bank Deed of Trust. (Id. ¶¶ 22-23; Ex. 4.)

Plaintiff declares "[i]n January 2009, [he] "began to experience severe financial problems, making it increasingly difficult for him to make the payment on the [Note]." (Id. ¶ 28.) Plaintiff declares he repeatedly contacted Defendant CitiMortgage Inc. ("Citi") and attempted to reduce his monthly mortgage payments and modify his loan. (Id. ¶¶ 33-56.)

On May 25, 2010 an Assignment of the Bank Deed of Trust was recorded (the "Assignment"). (Id. Ex. 5.) The Assignment was signed by Lisa Markham, listed as the Assistant Vice President of "DEUTSCHE BANK

NATIONAL TRUST COMPANY AS TRUSTEE F/K/A BANKERS TRUST COMPANY OF CALIFORNIA, N.A. SUCCESSOR TRUSTEE BY OPERATION OF LAW TO BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, SUCCESSOR BY MERGER TO SECURITY PACIFIC NATIONAL BANK AS TRUSTEE BY CITIMORTGAGE, INC., AS SERVICING AGENT" and granted, assigned, and transferred to Citi all beneficial interest under the Bank Deed of Trust. (Id.) The same day a Substitution of Trustee was recorded, also executed by Lisa Markham, that substituted CR Title Services Inc. for Stewart Title of California as Trustee. (Id. Ex. 6.)

Plaintiff declares he "believes that Deutsche Bank National Trust Company . . . have never had a beneficial interest in the [Bank Deed of Trust] [or] . . . the ability to grant, assign, or transfer to CITI[;] . . . that Lisa Markham was not the Assistant Vice President of Deutsche Bank[;]" and therefore, the Assignment and Substitution of Trustee are "invalid as a matter of law." (Id. ¶¶ 58- 59, 60, 64.)

A Notice of Default was recorded on May 25, 2010, the content of which includes the statements: Plaintiff owed $34,472.16 in past due payments plus costs and expenses, as of May 20, 2010; "When [the Notice of Default is] recorded mail to: CR Title . . . ." (Id. Ex. 7.) Plaintiff declares he "believes that CR Title is not authorized by the beneficiary of the [Bank Deed of Trust] to record the [Notice of Default]." (Id. ¶ 66.) Plaintiff also declares he "believes that actual notice of the [Notice of Default] was not given to junior lien holder [Eidson] as required by California Civil Code 2924b(c)(1)[;]" and that the Notice of Default "is invalid as a matter of law." (Id. ¶¶ 67-68.)

Plaintiff declares after he became aware of the Notice of Default, he continued his efforts to stop the foreclosure by calling and writing letters to "numerous employees and executives of CITI, GMAC

Residential Funding corporation, and their attorneys." (Id. ¶ 71.) Plaintiff sent multiple letters requesting documents he believed the Notice of Default specified he was entitled to, including the reinstatement amount and the Deed of Trust on which Citi was foreclosing. (Id. ¶¶ 72, 74, 80.) The Notice of Default states: "[u]pon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay." (Id. Ex. 7.)

On August 20, 2010, Citi sent Plaintiff a letter responding to his requests and included an incorrect Deed of Trust for a property in Orange County, California. (Id. Ex. 15-16.) The Orange County Deed of Trust is not in Plaintiff's name and refers to an entirely different property. (Id. Ex. 16.) However, Plaintiff has the correct Deed of Trust. (Id. Ex. 2.) The letter informed Plaintiff that loan modification documents were delivered to him on April 9, 2010, and Plaintiff returned them to Citi signed, but failed to provide Citi "with the $2, 404.98 payment that was due in conjunction with the returned documents."(Id. Ex. 15.) This Citi communication also states: "A payment history and a Schedule detailing the $41,917.45 of arrears on [Plaintiff's] account. Please be advised this is not a reinstatement amount due. Additional fees and costs may apply." (Id. Ex. 7.) In a letter dated August 24, 2010, Citi informed Plaintiff that the reinstatement amount, good through August 31, 2010, was $43,400.63. (Id. Ex. 17.) Plaintiff "dispute[s] that CITI is owed $43,400.63" and, based on his own calculations, believes that the beneficiary of the Note is owed $27,759.88. (Id. ¶¶ 83, 86.)

A Notice of Trustee's Sale was recorded on August 26, 2010, in which the date of sale is September 22, 2010. (Id. Ex. 8.) Plaintiff

declares he sent a check to Citi for $27,759.88 on September 3, 2010, which is the amount he believes he owes. (Id. ¶ 87, Ex. 19-21.)

**III. DISCUSSION**

Plaintiff argues he is entitled to a TRO enjoining the trustee's sale because Defendants are mistaken about the current amount due under the Note, and that the Assignment of the Bank Deed of Trust, Substitution of Trustee, Notice of Default, and Notice of Trustee's Sale are invalid. Further, Plaintiff argues that Defendants did not give proper notice to the junior lien holder, provide Plaintiff with the documents required by law, or comply with California Civil Code section 2924. (Pl.'s Mot. TRO "Mot." 6:6-14.) Plaintiff's arguments appear to concern the claim in his Complaint in which he alleges a "Wrongful Foreclosure (Negligence per Se)" under California Civil Code section 2924. (Compl. 19:2-3, 15.) Although Plaintiff has several claims in his Complaint, the only claim on which he appears to focus in his TRO application is his wrongful foreclosure claim.

"Wrongful foreclosure is an action in equity, where a plaintiff seeks to set aside a foreclosure sale that has already occurred. Because plaintiff's house has not yet been sold, a claim for wrongful foreclosure is not yet ripe." Foster v. SCME Mortg. Bankers, Inc., No. CIV. 2:10-518 WBS GGH, 2010 WL 1408108, at *4 (E.D. Cal. Apr. 7, 2010)(citations omitted). Even if the likelihood of Plaintiff's success on this claim should be addressed, Plaintiff has not shown he is likely to succeed on this claim. Although Plaintiff mentions several arguments that are not pertinent to this claim, they are woefully insufficient to support his request for injunctive relief.

///

///

**A. Likelihood of Success on the Merits**

"[T]he power of sale exercised by the trustee on behalf of the lender/creditor in nonjudicial foreclosures is a right authorized solely by the contract between the lender and trustor as embodied in the deed of trust." Garfinkle v. Superior Court, 21 Cal. 3d 268, 277 (1978) (citations omitted). However, the California legislature has established "certain minimum standards for conducting nonjudicial foreclosures . . . ." Id. at 278. California Civil Code sections 2924 through 2924k "provide a comprehensive [statutory] framework for the regulation of a nonjudicial foreclosure pursuant to a power of sale contained in a deed of trust." Moeller v. Lien, 25 Cal. App. 4th 822, 830 (1994). The Moeller court described this statutory scheme as follows:

> Upon default by the trustor, the beneficiary may declare a default and proceed with a nonjudicial foreclosure sale. The foreclosure process is commenced by the recording of a notice of default and election to sell by the trustee. After the notice of default is recorded, the trustee must wait three calendar months before proceeding with the sale. After the 3-month period has elapsed, a notice of sale must be published, posted and mailed 20 days before the sale and recorded 14 days before the sale. The trustee may postpone the sale at any time before the sale is completed.

Id. (citations omitted).

Plaintiff's arguments regarding why the notices he was given were defective are supported by his declaration in which he declares "he believes" what he opines is true. However, in light of the context in which Plaintiff states what he believes, his "belief" statements are "entitled to no weight because [Plaintiff has not shown he has] personal knowledge" of the matters on which he has given opinions prefaced with the word "believe." Bank Melli Iran v. Pahlavi, 58 F.3d 1406, 1412 (9th Cir. 1995); Cermetek, Inc. v. Butler Avpak, Inc., 573 F.2d 1370, 1377

(9th Cir. 1978)(equating "I understand" statement in affidavit to inadmissible "I believe" statements despite a general averment that the affiant had personal knowledge at beginning of the affidavit); Pace v. Capobianco, 283 F.3d 1275, 1279 (11th Cir. 2002)("The district court's treatment of the 'believe' portion of Hedge's statement in his affidavit-that Hedge 'observed motion in the red car which I believe was [Davis] raising his hands towards the roof of his car in an attempt to surrender'-as sufficient to create a fact issue about raised hands was error."). The quality of the evidence presented is germane to the determination of which side is likely to prevail.

Plaintiff argues that the Assignment and Substitution of Trustee were invalid because he believes Lisa Markham was not the Assistant Vice President of the transferring bank and that the transferring bank never had a beneficial interest under the Bank Deed of Trust. (Mot. 12:12-13:8.) Plaintiff argues consequently the Notice of Default and Notice of Trustee's Sale were invalid because they do not list an authorized beneficiary of the Bank Deed of Trust. (Id. 13:9-16, 14:17-18.)

Under California Civil Code section 2924(a)(1), a "trustee, mortgagee or beneficiary or any of their authorized agents" may conduct the foreclosure process. Under California Civil Code section 2924b(b)(4), a "person authorized to record the notice of default or the notice of sale" includes "an agent for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed substitution of trustee, or an agent of that substituted trustee." Since Plaintiff offers nothing but his unsupported "belief" that Citi is not a beneficiary of the Bank Deed of Trust, and conclusory assertions unsupported by facts concerning the validity of the Assignment and

Substitution of Trustee, Plaintiff lacks sufficient evidentiary support for his contentions.

Plaintiff also argues the Notice of Default is invalid because a copy of it was not sent to the junior lien holder pursuant to California Civil Code section 2924b(c)(1). (Mot. 13:17-18.) California Civil Code section 2924b(c)(1)-(2)(B) prescribes:

> The mortgagee, trustee, or other person authorized to record the notice of default or the notice of sale shall do the following . . . Within one month following recordation of the notice of default, deposit or cause to be deposited in the United States mail . . . a copy of the notice . . . . [to] [t]he beneficiary or mortgagee of any deed of trust or mortgage recorded subsequent to the deed of trust or mortgage being foreclosed . . . .

Plaintiff has not shown that he has standing to raise this issue on behalf of the junior lien holder. Therefore, even if Citi failed to give the junior lien holder Notice of Default as Plaintiff argues, nothing in the record shows Plaintiff has standing to litigate this matter.

Further, Plaintiff argues Citi has refused to provide him with documents that it is "required to provide under the law, including the reinstatement amount." (Mot. 13:23.) Plaintiff also argues Citi was required to provide a copy of the Bank Deed of Trust that "gives CITI the right to foreclose on the [Property]." (Id. 14:1-2.) However, the evidence Plaintiff presents shows Citi sent Plaintiff the documents and information he desires. Citi states in its August 20, 2010 letter that it sent Plaintiff the following: a history and schedule detailing the arrears on Plaintiff's account, Plaintiff's Promissory Note, and the Deed of Trust. (Decl. Ex. 15.)

Plaintiff also argues he has tendered all amounts he believes are currently due under the Note. (Mot. 16:23-24.) However, this argument is only supported by Plaintiff's "belief" regarding what he

owes, and this evidence is insufficient to show that Plaintiff's "belief" about what he owes is the total arrearage.

Therefore, Plaintiff has not shown he is likely to succeed on the merits of his "Wrongful Foreclosure (Negligence per Se)" claim.

**B. Irreparable Harm**

Plaintiff argues he will suffer irreparable harm absent the issuance of a TRO since "Plaintiff will lose his and his children's family home." (Mot. 18:13-14.) "Clearly, loss of a home is a serious injury." Alcaraz v. Wachovia Mortg. FSB, 592 F. Supp. 2d 1296, 1301 (E.D. Cal. 2009). "However, whether a particular foreclosure constitutes irreparable harm turns in part on the reasons for foreclosure." Mandriques v. World Sav., Inc., No. C 07-4497 JF (RS), 2009 WL 160213, at *3 (N.D. Cal. 2009) (citing Parker v. United States Dep't of Agric., 879 F.2d 1362, 1367-68 (6th Cir. 1989)). Here, Plaintiff has not provided a sufficient explanation why he is in his present predicament. The record indicates that an attempt has been made to help him keep his home, but he "failed to cooperate." Parker, 879 F.2d at 1368. Since Plaintiff has not shown that the irreparable harm he argues he will experience is caused by Defendants, this injunction factor does not favor granting Plaintiff's TRO request.

**C. The Balance of Equities and the Public Interest**

"The final two inquiries germane to an analysis of a TRO request are whether the balance of equities tips in Plaintiff's favor and whether the public interest will benefit from the proposed injunction. These factors may be viewed together." Saba v. Caplan, No. C 10-02113 SBA, 2010 WL 2681987, at *5 (N.D. Cal. July 6, 2010) (citing Independent Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly, 572 F.3d 644, 657-58 (9th Cir. 2009)).

Plaintiff argues the balance of equities and the public interest favor issuance of a TRO because "Defendants suffer nothing by preserving the status quo and allowing Plaintiff to remain in [his] home until this matter is determined on the merits." (Mot. 18:16-17.)

While "the potential loss of Plaintiff's home through foreclosure generally presents a hardship that weighs in [Plaintiff's] favor[,]" since Plaintiff has not shown he did not create the hardship he is experiencing, this factor does not weigh in Plaintiff's favor. Saba, 2010 WL 2681987, at *5.

Further, Plaintiff has failed to explain why the public interest favors injunctive relief which would halt a trustee's sale that Plaintiff has not shown fails to comply with the applicable statutory framework. Therefore, this factor has not been shown to weigh in his favor.

**IV. Conclusion**

For the stated reasons, Plaintiff's application for an ex parte TRO is DENIED.

Dated: September 15, 2010

GARLAND E. BURRELL, JR.
United States District Judge